# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| **ANTONARI WILLIAM ALEXANDER,** ) | |
| **Plaintiff,** ) | **Civil Action No. 7:17cv00524** |
| ) | |
| **v.** ) | **MEMORANDUM OPINION** |
| ) | |
| **BOYD PARKS,** *et al.*, ) | **By: Norman K. Moon** |
| **Defendants.** ) | **United States District Judge** |

Antonari Alexander, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] The matter before the court is the motion for summary judgment filed by the non-medical defendants[2] (collectively "Defendants"). I will grant in part and deny in part the motion for the reasons that follow.

## I.    Background

On April 15, 2017, Alexander assaulted Corrections Officer ("C/O") Maloney in A-6 pod at Red Onion State Prison because Alexander did not agree with the timing of his recreation and shower breaks. *See* Maloney Aff. ¶ 3-4, Dkt. No. 45-6; Maloney Assault Video,[3] at 4:45-4:55. While retreating from Alexander's punches, Maloney accidentally dropped his handcuffs and Alexander picked them up. Maloney Assault Video, at 4:54. Maloney ordered Alexander to stop, drop the handcuffs, and get on the floor. Alexander refused to comply and ran back to his cell. Maloney Aff. ¶ 4; Maloney Assault Video, at 4:56. Maloney chased Alexander and fired at least one burst of OC spray in Alexander's direction. Maloney Aff. ¶ 4; Maloney Assault Video,

---

[1] This opinion omits internal citations, alterations, and quotation marks, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

[2] Nurse Stump, whom Alexander incorrectly identified as "Stomp" in his complaint, filed a motion for summary judgment that will be addressed separately. The non-medical defendants are Defendants Parks, Maloney, Gibson, Mullins, Phipps, Messer, Adams, Younce, Kiser, and Bryant.

[3] Defendants provided several videos. For clarity, "Maloney Assault Video" refers to Exhibit B, filename 170417065837_ROSP161HUA600Front360_(1)_1.WMV.

at 4:57. When Maloney arrived in front of the open cell-door, he stood on the catwalk and held the oleoresin capsicum ("OC") spray canister toward the inside of the cell. Maloney Assault Video, at 5:01. Moments later, the cell door was secured with Alexander in his cell, Maloney stepped away, and backup officers arrived. *Id.* at 5:12. Responding officers included: Defendants Warden Kiser, Adams, Gibson, Messer, Mullins, Bryant, Parks, and Phipps. Br. in Supp. of Defs.' Mot. for Summ. J. 4, Dkt. No. 45; Maloney Assault Video, at 5:16-6:15.

C/O Gibson is a K-9 Officer. Upon arrival at A-6 pod, Gibson and his canine, "Evil," stood on the catwalk directly outside Alexander's cell. Maloney Assault Video, at 5:50-6:50. C/Os Phipps and Mullins ordered Alexander to lay on the ground in his cell. Br. in Supp. of Defs.' Mot. for Summ. J. 5, Dkt. No. 45. When Alexander complied, the cell door was opened, Alexander crawled out, and Phipps and Mullins restrained Alexander. *Id.*; Maloney Assault Video, at 6:18. Gibson and Evil backed up and stood near Alexander until Phipps and Mullins took Alexander away. Maloney Assault Video, at 10:11:55-10:12:52. After officers restrained Alexander, Sgt. Hill escorted Maloney to the medical department. Maloney Aff. ¶ 4; Maloney Assault Video, at 7:20-7:40. Neither Gibson nor Evil physically touched Alexander.

Warden Kiser also responded to the call for assistance. Kiser Aff. ¶ 4, Dkt. No. 45-5. Alexander alleges that Warden Kiser failed to intervene when his officers violated his rights and told his officers to "fuck [Alexander] up on the way to B-Building and teach him a lesson." Compl. 12. Warden Kiser disputes Alexander's account, stating that he had no participation in the restraint process or escort, he did not see anyone choke Alexander, and he did not tell his officers to "fuck him up." Kiser Aff. ¶¶ 4-5. After Alexander had been restrained in the A-6 pod, Warden Kiser went to the medical department to check on Maloney. *Id.* at ¶ 4.

C/Os Phipps, Mullins, and Parks then began escorting Alexander from A-Building to a segregation cell in B-Building, while Lt. Messer supervised. Maloney Assault Video, at

10:15:24-37; A-Building Vestibule Video,[4] 10:15:45; A-Building Entrance & Vestibule REM Video,[5] at 0:18-0:25.  Defendants allege that Alexander refused their offer to take Alexander to shower off any residual OC spray; meanwhile, Alexander asserts that Defendants refused to take him a shower.[6]  Messer Aff. ¶ 5, Dkt. No. 45-7; Compl. 10.

While on the boulevard between A-Building and B-Building, Defendants allege that they placed Alexander on the ground to regain control after Alexander attempted to pull away.  Br. in Supp. of Defs.' Mot. for Summ. J. 5.  Defendants assert that Alexander refused orders to cease being disruptive and kicked Parks twice in the abdominal area.  *Id.* at 6.  Messer then assisted Parks in controlling Alexander's legs, while C/O Gentry, who had joined the other officers during the disturbance, applied leg restraints.  Messer Aff. ¶ 5; Front Walkway Video,[7] at 10:14:34.  The officers lifted Alexander to his feet and brought him to cell 407 in B-Building without further incident.  Front Walkway Video, at 2:50-3:20; B-Building Entrance Video,[8] at 0:24-043; Rear B-400 Video,[9] at 0:50-1:20.

Phipps, Mullins, and Parks forced Alexander to the floor in front of the cell.  Br. in Supp. of Defs.' Mot. for Summ. J. 6; Rear B-400 Video, at 3:58-4:00; First Handheld Video April 15,[10] at 1:00-1:30.  While officers held him down, Alexander became combative[11] and Defendants allege that he attempted to break away.  Br. in Supp. of Defs.' Mot. for Summ. J. 6; Rear B-400

---

[4] Exh. B, filename: 170418095230_ROSP274HUB400-600Vest_(1)_1.WMV.

[5] Exh. B, filename: 041517OffenderAlexanderA456vestibule.rem.

[6] Officers took Alexander's cellmate, Russell Banks, to shower because of the use of OC spray.

[7] Exh. B, filename: 170418094045_ROSP204HUBFrontWalkway_(1)_1.WMV.

[8] Exh. B, filename: 170415101451_ROSP275HUB400-600Shakedown_(1)_1.WMV.

[9] Exh. B, filename: 170415101604_ROSP242HUB400Rear360_(1)_1.WMV.

[10] Exh. B, filename: Offender Alexander Part 1 41517.MPG.

[11] Alexander threatened officers, saying: "I'll be back, I'm gonna get your ass you better watch when I come for you," "I'm gonna stab the fuck out your ass as soon as I see you," and "Soon as I see you I'm gonna stab you right in your face."  First Handheld Video April 15, at 1:30-2:05.

Video, at 3:58-4:00. While waiting for the nurse, Adams, Phipps, and Parks held Alexander as Messer and Sgt. Bryant applied ambulatory restraints. Rear B-400 Video, at 10:18:55-10:26:35.

When Nurse Stump arrived, she evaluated Alexander, checking the tightness of his restraints, his vital signs, and his injuries. First, Nurse Stump was able to place two fingers under Alexander's wrist and ankle restraints. Second Handheld Video April 15,[12] at 16:32. Second, although Alexander told Stump that he had been slammed twice and that he was bleeding everywhere, Nurse Stump determined that Alexander had abrasions and redness that resembled rug burn, but did not observe any active bleeding. *Id.* at 9:30-10:00; 19:50-20:20.

The following morning, officers removed the ambulatory restraints. Stump asked Alexander if he required medical attention, and Alexander responded affirmatively, complaining about his hand. Handheld Video April 16,[13] at 1:45-1:55. Stump observed that the hand appeared swollen and advised Alexander to keep the hand elevated as much as possible until he could be seen by a doctor. *Id.* at 4:45. Stump inquired if Alexander had any other issues, and Alexander responded that he did not. *Id.* at 5:30. Stump gave Alexander some Tylenol and placed him on the schedule to be seen by the institutional physician. *Id.* at 6:04; Stump Aff. ¶ 16, Dkt. No. 44-1.

Alexander did not complain on April 16, 2017 about any injuries related to OC spray, his restraints being too tight, the skin being ripped from his legs, face, torso, or arms, swelling of his eye socket, a knot on his head, his testicles, or his fingers. An x-ray of Alexander's right hand on June 2, 2017 showed no evidence of acute fracture, dislocation, or osseous lesion. Patient Reports (June 2, 2017), Dkt. No. 45-2.

---

[12] Exh. B, filename: Offender Alexander Part 2 41517.MPG.
[13] Exh. B, filename: A. Alexander #1185995.MPG.

Lastly, in his response to the motions for summary judgment, Alexander asserts that the videotapes were tampered with and that officers intimidated Nurse Stump into lying. Nurse Stump denies both allegations.

## II.  Claims

Alexander alleges the following claims:[14]

1. Maloney used excessive force against Alexander when he spit in Alexander's face, threatened Alexander, and sprayed OC spray on Alexander and Alexander's cellmate when neither inmate was a threat.

2. Gibson used excessive force and retaliated against Alexander when he kicked and assaulted Alexander after Alexander had been fully restrained in handcuffs and leg shackles. Gibson caused Alexander pain, suffering, physical injury, and emotional distress.

3. Mullins used excessive force when he choked, kicked, punched, slammed, scratched, elbowed, and kneed Alexander in the groin after Alexander was fully restrained in handcuffs and leg restraints. Mullins caused Alexander pain, suffering, physical injury, and emotional distress.

4. Phipps used excessive force and retaliated against Alexander when he punched, kneed, stomped, and slammed Alexander after Alexander had been fully restrained in handcuffs and leg restraints. Phipps caused pain, suffering, physical injury, and emotional distress.

5. Messer used excessive force and retaliated against Alexander when he punched, kicked, slammed, and assaulted Alexander and encouraged Gibson, Mullins, Parks, and Phipps to use excessive force against Alexander after Alexander had been fully

---

[14] Alexander's filings are commingled and confusing. However, I have addressed all identifiable claims.

restrained by handcuffs and leg restraints.  Messer caused pain, suffering, physical injury, and emotional distress.

6. Parks used excessive force and retaliated against Alexander when he punched, slammed, kicked, kneed, elbowed, choked, scratched, and headbutted Alexander in the groin after Alexander was already fully restrained by handcuffs and leg restraints. Parks caused serious pain, suffering, physical injury, and emotional distress.

7. Adams used excessive force and retaliated against Alexander when he punched, slammed, kicked, and stomped Alexander, and encouraged Parks, Gibson, Phipps, Mullins, and Messer to use excessive force against Alexander after Alexander had been fully restrained.

8. Unit Manager ("Mgr.") Younce was deliberately indifferent to, failed to correct, and/or encouraged the unconstitutional conduct of Maloney, Gibson, Parks, Phipps, Mullins, Messer, and Adams.  Mgr. Younce caused Alexander pain, suffering, physical injury, and serious emotional distress.

9. Warden Kiser was deliberately indifferent to the unconstitutional conduct of his employees because he had knowledge of the officers' actions against Alexander and encouraged continued misconduct after April 15, 2017.

10. Mgr. Younce and Sgt. Bryant were deliberately indifferent when they refused to retrieve Alexander's personal property or allow him to shower in a timely manner.

11. Mgr. Younce was deliberately indifferent when he refused Alexander outside recreation for forty-five days.

12. Mgr. Younce, Adams, and Messer were deliberately indifferent when they failed to take pictures of Alexander's bodily injuries after the April 15, 2017 incident.  Their

failure caused Alexander serious pain, suffering, physical injury, and emotional distress.

13. Gibson, Mullins, Parks, Phipps, Messer, and Adams were deliberately indifferent to his serious medical needs when they told Nurse Stump not to treat Alexander.

14. John Doe used excessive force and retaliated against Alexander when he squeezed Alexander's testicles until Alexander "could no longer be aware of his surroundings" after Alexander was fully restrained. Compl. 9.

For relief, Alexander seeks a declaration that Defendants' conduct was unconstitutional, court costs, damages, the overturning of institutional disciplinary convictions, good time credit restoration, transfer out of the Western District of Virginia permanently to Maryland, Boston, Carolina, or Washington, D.C., a written apology from all defendants, and to have his medical fees and infraction fines paid for.

## III. Standards of Review

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute over a material fact must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). As such, the moving party is entitled to summary judgment if the evidence supporting a genuine issue of material fact "is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 250.

The moving party bears the burden of proving that judgment on the pleadings is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 322-324; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence set forth must meet the "substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

## B. *Pro Se* Pleadings

Alexander is proceeding *pro se* and, thus, entitled to a liberal construction of the pleading. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 90-95 (2007). However, "principles requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The Fourth Circuit has explained that "though *pro se* litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Id.* at 1276. "A court considering a motion [for summary judgment] can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## C. Section 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Notably, a plaintiff must sufficiently allege a defendant's personal act or omission leading to a deprivation of a federal right. *See Fisher v. Washington Metro. Area Transit Author.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by Cty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991). Negligent deprivations are not actionable under § 1983. *See, e.g.*, *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995).

## D. Eighth Amendment

### 1. Excessive Force

The Eighth Amendment's prohibition on cruel and unusual punishment forbids the malicious and sadistic infliction of pain on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To determine "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm," the Supreme Court has established the following factors: (1) the need for application of force, (2) the relationship between the need and the amount of force used, (3) the extent of any inflicted injury, (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and (5) any efforts made to temper the severity of a forceful response. *Id.* at 321.

"It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Id.* "The infliction of pain in the course

of a prison security measure, therefore, does not amount to cruel and unusual punishment because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* Further, the Eighth Amendment does not require significant injury: "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

## 2. Deliberate Indifference

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015). A prison official will not be held liable for deliberate indifference to a prisoner's medical needs unless two requirements are met. First, the plaintiff must satisfy the objective component: (1) that he suffered "a serious or significant physical or emotional injury," or (2) "a substantial risk of such serious harm." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "An inmate alleging a deliberate indifference claim must establish that his medical condition was objectively serious— that is, 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Drakeford v. Mullins*, 678 F. App'x 185, 186 (4th Cir. 2017) (per curiam) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).

Second, the subjective prong requires proof that "the officials acted with a sufficiently culpable state of mind." *De'Lonta*, 330 F.3d at 634. The defendant must know "both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016); *see also Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard."); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("The official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").[15]

Correctional officials are entitled to rely on the expertise of their institution's medical staff and can only be held liable for inadequate medical treatment if: (1) the supervisory defendants failed promptly to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with prescribed treatment; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations. *Miltier*, 896 F.2d at 854; *see also Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002). As a bright line rule, non-medical prisoner administrators "cannot be liable for the medical staff's diagnostic decisions" and "cannot substitute their judgment for a medical professional's prescription." *Meloy*, 302 F.3d 845 at 849; *Swart v. Clarke*, No. 7:14CV00652, 2016 WL 411022, at *6 (W.D. Va. Feb. 1, 2016) ("It is not the function of prison administrators, or the court, to second guess the good faith treatment decisions of licensed physicians."). Furthermore, "non-physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 539 (3d Cir. 2017).

### E. First Amendment Retaliation

To establish a retaliation claim, a plaintiff must allege: (1) that he engaged in constitutionally protected conduct, (2) he suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action. *A Soc'y Without a Name v.*

---

[15] The alleged deprivation must be extreme; "mere negligence" is not enough. *Scinto*, 841 F.3d at 225; *see also Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("The treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Deliberate indifference may be demonstrated by either actual intent or reckless disregard. . . . Nevertheless, mere negligence or malpractice does not violate the eighth amendment.").

*Virginia*, 655 F.3d 342, 350 (4th Cir. 2011). An inmate must present more than "naked allegations of reprisal," *Adams*, 40 F.3d at 74, because "every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct," *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

"A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). This objective inquiry examines the specific facts of each case, taking into account the actors involved and their relationship. *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006). Because "conduct that tends to chill the exercise of constitutional rights might not itself deprive such rights, . . . a plaintiff need not actually be deprived of [his] First Amendment rights in order to establish . . . retaliation." *Constantine*, 411 F.3d at 500. Nonetheless, "the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill such activity." *Id.*

The test for causation requires an inmate to show that, but for the exercise of the protected right, the alleged retaliatory act would not have occurred. *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). An inmate experiencing an adverse action shortly after a correctional officer learns that the prisoner engaged in a protected activity may create an inference of causation, but, generally, mere temporal proximity is "simply too slender a reed on which to rest a Section 1983 retaliatory [] claim." *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (finding an inference of causality only if "the temporal proximity [is] very close"). "The Fourth Circuit has not set forth a specific timeframe for what constitutes very close." *Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173 F. Supp. 3d 242, 250 (D. Md. 2016). Nevertheless, even if the temporal proximity

is insufficient to create an inference of causation, "courts may look to [events that might have occurred during] the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

## F. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant asserts the affirmative defense of qualified immunity, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right[,]" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In determining whether the law was clearly established, the court "ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose." *Lefemine v. Wideman*, 672 F.3d 292, 298 (4th Cir. 2012), *vacated on other grounds*, 568 U.S. 1 (2012). The onus is on a defendant asserting qualified immunity to actually put forth authorities and argument showing that he is entitled to it. *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013).

## IV.    Discussion

### A. Evidence Tampering and Intimidation

Alexander alleges that the videotapes were altered and that officers intimidated Stump into lying. First, Alexander's tampering allegations are conclusory, and thus not entitled to the assumption of truth, because he did not proffer facts to support his claim. *See Iqbal*, 556 U.S. at 678. Second, Alexander alleges that Stump lied in her affidavit and on camera because when

Stump asked if Alexander needed medical attention, all the officers said in unison: "Fuck him, he can do [without] it!" Resp. to the Mots. for Summ. J. 10. He states that when Stump left him, she was scared, sad, and had her head down. *Id.* However, the videos establish that officers never made that statement, and Stump did not appear intimidated. Instead, the officers had entirely respectful interactions with Stump on both April 15 and April 16. *See, e.g.*, Handheld Video April 16, 2017, at 6:08 (officer stating, "Thank you, nurse," after Stump finished her medical evaluation recap). Therefore, I will credit the defendants' evidence. *See Iqbal*, 556 U.S. at 678; *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276-77 (4th Cir. 2011) ("When documentary evidence blatantly contradicts a plaintiff's account so that no reasonable jury could believe it, a court should not credit the plaintiff's version on summary judgment."); *United States v. Adams*, No. 4:08cr00033-3, 2012 WL 5465887, at *5 (W.D. Va. June 25, 2012) (holding naked allegations of evidence tampering as conclusory).

## B. Official Capacity

To the extent Alexander brings this action against defendants in their official capacity for monetary damages, such claims are not cognizable under § 1983. "Neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). Because the prison official defendants in their official capacity are not "persons" who can be sued under § 1983, I will grant the defendants' motion for summary judgment with respect to all official capacity claims.

## C. Retaliation

In his complaint, Alexander states that the defendants retaliated against him based on his religion.[16] In his response to the motion for summary judgment, Alexander alleges that he is

---

[16] "The defendants all knew I was a Sunni Muslim and that[']s why I was attacked." Compl. 12.

both Muslim and black; therefore, the defendants must have discriminated against him.[17]

Defendants dispute the claim, stating that they appropriately subdued, segregated, and disciplined Alexander because he assaulted Maloney and Parks, failed to follow orders, was generally disruptive, and threatened officers.

After review of the record, Alexander fails to state a retaliation claim against any defendant because he merely asserts, without factual support, that he was retaliated against. His allegations are conclusory, insufficient as a matter of law, and not entitled to be taken as true. *See*, *Iqbal*, 556 U.S. at 676; *Goldsmith v. Mayor and City Council of Balt.*, 987 F.2d 1064, 1071 (4th Cir. 1993) (granting summary judgment when plaintiff "utterly failed to support her conclusory allegations of retaliatory motive with evidence sufficient to support the verdict of a rational trier of fact").[18] Therefore, drawing all disputed facts and reasonable inferences in favor of the plaintiff, the defendants are entitled to qualified immunity for damages, and I will grant the motion for summary judgment as to the retaliation claims.

---

[17] "I am a Muslim, and that's a part of the reason nobody cares about my well-being [and] not to mention I'm black . . ." Resp. to the Mot. for Summ. J. 9.

[18] To the extent Alexander argues that the defendants' disciplinary charges against him were false, such allegations cannot underpin a retaliation claim until the disciplinary charges are called into question or overturned. Any claim that "would, if established, necessarily imply the invalidity of" a disciplinary conviction is not cognizable under § 1983. *Edwards v. Balisok*, 520 U.S. 641, 646 (1997). For monetary and/or injunctive relief under § 1983 based on a conviction, a plaintiff must "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 485 (1994). Alexander has not alleged that his disciplinary proceedings were questioned or invalidated, and his claim is "based on allegations of deceit and bias on the part of the decision maker that necessarily implies the invalidity of the punishment imposed, [which] is not cognizable under § 1983." *Balisok*, 520 U.S. at 648; *see also Mukuria v. Mullins*, No. 7:15CV00451, 2015 WL 6958343, at *2 (W.D. Va. Nov. 10, 2015) (summarily dismissing § 1983 claims for monetary and injunctive relief based on a disciplinary conviction while the conviction remained valid).

### D. John Doe

In his complaint, Alexander asserts that an unknown defendant, "John Doe," used excessive force, retaliated, and sexually assaulted him by squeezing his testicles while he was restrained. When the court ordered Alexander to supply additional information, Alexander responded that John Doe was a white male employee who "could have been less th[a]n 300 pounds," and that he had assaulted Alexander inside the B-Building recreation yard gate at around 10:25 A.M. on April 15, 2017. Pl.'s First Resp., Dkt. No. 26. Defendants informed the court that Alexander's response was not sufficient to identify a potential defendant, and the court again ordered Alexander to provide additional information on John Doe. *See* Order, Dkt. No. 29. Alexander replied that it might have been Parks, Phipps, Gibson, or Mullins. Pl.'s Second Resp., Dkt. No. 30. Defendants moved to dismiss the claim for lack of specificity. Defs.' Resp., Dkt. No. 31.

Although the Federal Rules of Civil Procedure do not require a plaintiff to plead with particularity, a plaintiff must establish a genuine issue of material fact to avoid dismissal after a motion for summary judgment. *See Iqbal*, 556 U.S. at 676; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Here, Alexander alleges that one of the officers escorting him from A-Building to B-Building assaulted him. Although defendants deny such an event took place, the allegations would likely be sufficient to create a genuine dispute of material fact.

However, video evidence from the entrance hall to B-Building shows that no defendant injured him in the way he claims. B-Building Entrance Video, at 0:24-043. In the footage, an officer, likely Lt. Messer, lifts Alexander's sagging pants from behind while two other officers, likely Phipps and Parks, hold Alexander up by the arms. *Id.* The relevant footage shows: (1) that the two officers holding Alexander could not have grabbed his testicles in the entry hall because they never released their grip on his arms, back, and head, and (2) the hands of the

officer lifting Alexander's pants are visible and he did not squeeze Alexander's testicles. Instead, the video establishes that John Doe merely lifted up Alexander's pants that had sagged below his boxers, twice from Alexander's left, B-Building Entrance Video, at 0:34, 0:39, and twice from his right, B-Building Entrance Video, at 0:35, 0:40. John Doe then followed closely behind Alexander with both hands on Alexander's back as the other officers escorted the plaintiff further into the B-Building. As uncontroverted video evidence directly disputes Alexander's account of events, I conclude that Alexander fails to establish a genuine issue of material fact regarding his claim against John Doe. *See Witt*, 633 F.3d at 276-77. Therefore, I will dismiss the claim against John Doe.

### E. Excessive Force

### *1. Maloney*

In Claim 1, Alexander alleges that Maloney used excessive force when he sprayed Alexander with OC spray and spit on Alexander after Alexander retreated to his cell and was no longer a threat. Alexander asserts that he has bronchitis and asthma and that he suffered emotional distress. Maloney contends that he did not spit on Alexander and that his use of force was appropriate because Alexander had just assaulted him, refused to comply with orders, and possessed Maloney's handcuffs. Maloney argues that the force was necessary to reestablish control and ensure the security and safety of himself, other officers, and the inmates.[19]

Under the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(e), an inmate cannot sue for damages of emotional or mental injury in the absence of physical injury. Furthermore, "the mere incantation of physical and mental injury, of course, is inadequate to survive a motion for summary judgment. At a minimum, an inmate must specifically describe

---

[19] Alexander appears to allege that Maloney sprayed him a second time after he had retreated to his cell. The defendant does not address this contention in the motion for summary judgment. Instead, he focuses on the initial use of OC spray which occurred immediately following the assault.

not only the injury but also its relation to the allegedly unconstitutional condition." *Strickler v. Waters*, 989 F.2d 1375, 1381 n.9 (4th Cir. 1993); *see also Tafari v. McCarthy*, 714 F. Supp. 2d 317, 348 (N.D.N.Y. 2010) (Lowe, Mag. J.) (single incident of correctional officer spitting chewing tobacco in inmate's face does not constitute excessive force); *Peyravi v. Cuellar*, No. SA-06-CA-793-XR, 2007 WL 4205713, at *2 (W.D. Texas Nov. 8, 2007) (granting summary judgment on excessive force claim when plaintiff failed to produce evidence of physical injury and never complained about being exposed to pepper spray); *Kitt v. Bailey*, No. H-14-0368, 2015 WL 3909116, at *6 (S.D. Texas June 24, 2015) (granting summary judgment on excessive force claim when plaintiff's only complaints were chest pain and shortness of breath due to chemical spray).

Although the PLRA standard for physical injury is minimal, Alexander fails to allege that Maloney caused him any physical harm whatsoever. Instead, he merely states that he has bronchitis, asthma, and lingering emotional distress. Allegations of two broad medical conditions and emotional trauma are not sufficient under § 1997e(e). *See Murray v. Raney*, No. 1:11cv00428, 2012 WL 5985543, at *5 n.4 (Idaho Nov. 29, 2012) (holding that general preexisting medical conditions do not satisfy the § 1997e(e) physical injury requirement). Furthermore, when Nurse Stump assessed Alexander on both April 15 and April 16, Alexander made no complaints regarding his bronchitis, asthma, or lingering physical or emotional effects of the OC spray or C/O Maloney's alleged spit. Alexander has also not proffered any evidence showing that he later complained about or sought treatment for injuries caused by Maloney. Therefore, Alexander's allegations fail to establish a genuine dispute of material fact regarding either alleged OC spray incident.

Lastly, to any extent Alexander attempts to bring a constitutional claim regarding Maloney's alleged verbal harassment, the Supreme Court has ruled that verbal assaults and

threats do not state a constitutional claim actionable under 42 U.S.C. § 1983. *Paul v. Davis*, 424

U.S. 693, 703 (1976); *Wagner v. Wheeler*, 13 F.3d 86, 93 (4th Cir. 1993) (verbal abuse not

cognizable as a freestanding § 1983 claim).

Therefore, I conclude that Alexander fails to establish a genuine dispute of material fact

as to his allegations against Maloney. Accordingly, Maloney is entitled to qualified immunity

for damages, and I will grant the motion for summary judgment as to Claim 1.

### 2. *Gibson*

In Claim 2, Alexander asserted that Gibson used excessive force when he kicked and

assaulted a fully restrained Alexander. However, in his response to the motions for summary

judgment, Alexander admits that several unspecified defendants were bystanders that did not

physically touch him.[20] After reviewing the record, it is apparent that Gibson never physically

touched Alexander. Furthermore, to the extent that Alexander attempts to set forth a bystander

liability claim, a plaintiff may not amend his complaint in the context of a memorandum of law

opposing summary judgment. *See, e.g.*, *S. Walk at Broadlands Homeowner's Ass'n, Inc. v.*

*OpenBand at Broadlands, L.L.C.*, 713 F.3d 175 (4th Cir. 2013) ("It is well-established that

parties cannot amend their complaints through briefing or oral advocacy."); *Hurst v. District of*

*Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017) ("A plaintiff may not amend her complaint via

briefing.") (citing *Car Carriers Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

Therefore, I will not rule on the bystander liability claim, and I conclude that Alexander

otherwise fails to present a genuine dispute of material fact regarding Gibson's alleged Eighth

Amendment violations. Accordingly, Gibson is entitled to qualified immunity for damages, and

I will grant the motion for summary judgment as to Claim 2.

---

[20] "Not all of the defendants[] put the[ir] hands on me[] and harmed but 4 [of] the defendants[] that did'nt [sic] physically attack me with the[ir] hands & body . . . were bystanders & they allowed such harmful . . . events to happen to the plaintiff." Resp. to the Mot. for Summ. J. 5. In his complaint, Alexander alleged, under oath, that Gibson physically assaulted him.

### 3. *Mullins, Phipps, Parks, Messer, Adams, and Bryant*

In Claims 3 through 7, Alexander asserts that Mullins, Phipps, Parks, Messer, and Adams used excessive force when they punched, slammed, kicked, and stomped him, encouraged other defendants to hurt him, and applied his restraints too tightly. Defendants submit that any force utilized was made in good faith and in direct response to Alexander's disruptive and violent behavior. Specifically, the defendants assert that they had to physically restrain Alexander multiple times for security reasons: (1) Mullins and Phipps used force on Alexander after he punched Maloney, (2) Mullins, Phipps, Parks, Messer, and Adams used force on Alexander when he became disruptive during the escort from A-Building to B-Building, and (3) Adams and Messer used force on Alexander when he was disruptive in front of his cell in B-Building.

Despite the defendants' significant evidence, I cannot grant the motion for summary judgment because excessive force may have occurred. The distances and angles of the cameras, as well as the body positioning of both the officers and Alexander, leaves room for the possibility of the alleged unconstitutional actions. Therefore, all the *Whitley* factors[21] are in dispute. For factors 1, 2, 4, and 5, Alexander alleges, for all three occurrences, that he was no longer a threat and the officers' actions were unjustified. Meanwhile, the defendants assert that they had to use force against Alexander because he assaulted officers, attempted to pull away twice, was generally disruptive, and repeatedly refused to follow orders. Regarding the third factor, Alexander contends that he incurred several injuries, including extreme pain, an inability to walk, skin ripped off his arms, legs, torso, and face, a damaged left eye socket, and bruising on his head. He also generally alleges that the defendants' actions caused him pain, suffering, and

---

[21] (1) The need for application of force, (2) the relationship between the need and the amount of force used, (3) the extent of any inflicted injury, (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and (5) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321.

emotional distress.  Although the record belies Alexander's allegations that he suffered serious physical injuries, even minor injuries and pain implicate the Eighth Amendment when unnecessarily and wantonly inflicted.  *McMillian*, 503 U.S. at 9.

Therefore, drawing all disputed facts and reasonable inferences in Alexander's favor, I conclude that he has established a genuine dispute of material fact regarding his excessive force claims against Mullins, Phipps, Parks, Adams, and Messer.  Accordingly, I will deny the defendants' motion for summary judgment as to Claims 3 through 7.

### F.  Warden Kiser

In Claim 9, Alexander alleges that Warden Kiser witnessed the excessive force incidents, failed to intervene or correct the officers' misconduct, and told officers to "fuck [Alexander] up and teach him a lesson."  Compl. 12.  Warden Kiser asserts that he did not witness any constitutional violations by his staff and he did not tell his officers to harm Alexander.  At the threshold, Alexander's verbal abuse and subordinate liability claims are not cognizable under § 1983.  *See Paul*, 424 U.S. at 703 (verbal abuse not cognizable); *Iqbal*, 556 U.S. at 676 (*respondeat superior* not actionable against § 1983 defendants).

Alexander also appears to argue that Warden Kiser is liable as a supervisor.[22]  In order to set forth a claim for supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799.  "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions."

---

[22] The respondent did not directly address supervisory liability; regardless, Alexander's allegations fail to state a claim upon which relief may be granted.

*Id.* Alexander's claim fails because he has not alleged that the conduct has occurred on multiple occasions. He nakedly asserts that Warden Kiser "maliciously and sadistically encouraged the continuation of all the misconducts that plaintiff suffered from after and on 4-15-17 incident. Therefore violating the plaintiff[']s rights by not removing him from the Red Onion compound, knowing that the plaintiff was being treated unfairly." Compl. 6. His allegations are conclusory and lack specific detail; therefore, I will dismiss the supervisor liability claim against Warden Kiser.

As for Alexander's bystander liability claim, a prison official may be liable if he: "(1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act." *Randall v. Prince George's Cty, Md.*, 302 F.3d 188, 203 (4th Cir. 2002). He must also be at the scene of the alleged constitutional violation when it occurred and acquiesce in the use of force. *See Smith v. Ray*, 409 F. App'x 641, 649 (4th Cir. 2011). Since I have determined that a genuine dispute of material fact exists as to whether Mullins and Phipps used excessive force in A-Building, and Warden Kiser was present at that time, Warden Kiser may be liable as a bystander regarding that incident because the first and third elements of *Randall* are in dispute: (1) whether a constitutional violation occurred, and (3) whether Warden Kiser chose not to act.[23] Therefore, drawing all disputed facts and reasonable inferences in favor of Alexander, I will deny in part the motion for summary judgment as to the bystander liability claim in A-Building. However, Warden Kiser is entitled to qualified immunity for damages and summary judgment on bystander claims based on injuries allegedly received during the escort or in B-Building.

---

[23] After Mullins and Phipps restrained Alexander, Warden Kiser went to the medical department to check on Maloney. Kiser Aff. ¶ 4.

## G.  Property, Recreation, and Showers

In Claim 10, Alexander alleges that Mgr. Younce and Sgt. Bryant denied him access to his personal property and denied him showers for eleven days; in Claim 11, Alexander contends that Mgr. Younce denied him access to outside recreation for forty-five days.  The defendants argue that such actions did not violate the constitution.

First, "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Alexander has a postdeprivation remedy under Virginia law, the Virginia Tort Claims Act, Va. Code § 8.01-195.3.  Therefore, the defendants are entitled to qualified immunity for damages, and I will grant the motion for summary judgment as to the deprivation of property claims against Mgr. Younce and Sgt. Bryant.

Second, to establish that living conditions constitute cruel and unusual punishment, a prisoner must show both "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials."  *Strickler*, 989 F.2d at 1379.  "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."  *De'Lonta*, 330 F.3d at 634.  "In order to demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions, or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions."  *Id.*  A sufficiently serious deprivation occurs when "a prison official's act or omission . . . results in the denial of the minimal civilized measure of life's necessities."  *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991).

The defendants argue that these allegations are no more than a "routine discomfort [that is] part of the penalty that criminal offenders pay for their offenses against society," and that Alexander does not establish that the conditions caused him any injury. *Strickler*, 989 F.2d at 1380. I agree that Alexander has failed to assert that the conditions resulted in injury.[24] Where the defendants do not dispute the conditions and the plaintiff does not allege sufficient injury, the defendants are entitled to summary judgment. *See Thompson v. Clarke*, No. 7:17cv00111, 2018 WL 4689474, at *6 (W.D. Va. Sept. 28, 2018). Accordingly, the defendants are entitled to qualified immunity for damages, and I will grant the motion for summary judgment on Claims 10 and 11.

## H. Photographs

In Claim 12, Alexander alleges that Mgr. Younce, Adams, and Messer violated his Eighth Amendment rights by failing to take photographs of his injuries. Defendants assert that the allegation does not sustain a constitutional violation—Alexander does not allege that the failure to take photographs physically harmed him. *See Whitley*, 475 U.S. at 316 (requiring infliction of pain). Furthermore, the record belies Alexander's allegations because the defendants did take photographs of Alexander's injuries. *See* Photographs of Alexander, Dkt.

---

[24] Alexander's allegations also do not demonstrate extreme deprivation, because temporary restrictions on outside recreation, showers, and personal property constitute a mere inconvenience. *See, e.g.*, *Shakka v. Smith*, 71 F.3d 162, 167-68 (4th Cir. 1995) (no Eighth Amendment violation where prisoner was not allowed to shower for three days after having human excrement thrown onto him because he was provided water and cleaning materials); *Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (no Eighth Amendment violation where inmates allowed only one shower per week); *Whisman v. Johnson*, No. 7:10CV00010, 2010 WL 231356, at *2 (W.D. Va. Jan. 20, 2010) (lack of adequate daily recreation not extreme deprivation); *Trujillo v. Edgefield Fed. Pris.*, No. 0:10-2058, 2011 WL 2935853, at *4 (D.S.C. July 18, 2011) (lack of outside recreation and restriction of access to legal materials not extreme deprivation of basic human needs); *but see Mitchell v. Rice*, 954 F.2d 187, 192-93 (4th Cir. 1992) (seven months without out-of-cell exercise violated the Constitution).

No. 45-3. Therefore, the defendants are entitled to qualified immunity for damages and I will grant the motion for summary judgment as to Claim 12.

## I. Deliberate Indifference

In Claim 8, Alexander asserts that Mgr. Younce was deliberately indifferent when he witnessed the unconstitutional actions of Maloney, Gibson, Parks, Phipps, Mullins, Messer, and Adams and failed to correct and/or encouraged the continuation of the misconduct. Meanwhile, in Claim 13, Alexander alleges that Gibson, Mullins, Parks, Phipps, Messer, and Adams were deliberately indifferent to his serious medical needs and told  not to treat Alexander's injuries.

First, Alexander nakedly asserts a supervisory liability claim against Younce, alleging that Younce "wantonly failed to correct th[e] misconduct and he maliciously and sadistically encouraged the continuation of such misconducts." Compl. 5. However, Alexander has not proffered any facts supporting his claim or established that the alleged misconduct occurred more than once. *See Shaw*, 13 F.3d at 799 (requiring that the misconduct occur on multiple occasions). Therefore, his claim fails as conclusory and insufficient as a matter of law. Drawing all disputed facts and reasonable inferences in favor of the plaintiff, Younce is entitled to qualified immunity for damages, and I will grant the motion for summary judgment as to the supervisory liability claim.

Second, defendants assert that they did not interfere with Alexander's medical treatment and Alexander has not sufficiently alleged that he suffered from a medical condition. I agree. The record, including video and medical evidence, show that the defendants did not interfere with Alexander's medical treatment or tell Nurse Stump not to treat him. They allowed Nurse Stump to evaluate Alexander without objection on both April 15 and April 16, 2017, but she determined that no treatment beyond Tylenol was necessary. Second Handheld Video April 15,

at 8:13-14:45 (initial assessment); Second Handheld Video April 15, at 19:33-20:32 (post-evaluation summary); Handheld Video April 16, at 1:45-6:05.

Furthermore, to the extent Alexander argues that the defendants ignored his obvious medical needs, the defendants were entitled to rely on Nurse Stump's medical judgment. *See Miltier*, 896 F.2d at 854. Medical records establish that Nurse Stump signed Alexander up for a doctor's appointment, the defendants did not interfere, and a physician determined that Alexander suffered no serious injuries. Alexander has not specifically alleged that they interfered with his medical treatment at any other time. Therefore, drawing all disputed facts and reasonable inferences in favor of the plaintiff, Alexander fails to demonstrate a genuine dispute of fact regarding the defendants' alleged deliberate indifference. The defendants are entitled to qualified immunity for damages, and I will grant the motion for summary judgment as to Claim 13.[25]

## V.     Conclusion

Accordingly, I will deny in part the defendants' motion for summary judgment as to the excessive force claims against defendants Mullins, Phipps, Parks, Messer, and Adams (Claims 3 through 7), and the bystander liability claim against Warden Kiser (Claim 9). However, the defendants are entitled to qualified immunity and summary judgment on all other claims.

The Clerk is directed to send a copy of this opinion and the accompanying order to the parties.

**ENTER:** This $\underline{\text{28th}}$ day of January, 2019

---

[25] To any extent Alexander argues that Maloney denied him medical treatment, Alexander fails to establish that he was denied medical treatment or that Maloney had any personal or supervisory involvement in denying Alexander medical treatment. Maloney was not present as officers moved Alexander from A-Building to B-Building and Alexander fails to specifically allege that Maloney denied him, or caused for him to be denied, medical treatment at any time.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE